---

(8 Misc. Rep. 344.)

### In re FOSTER'S ESTATE.

#### (Surrogate's Court, Kings County. May, 1894.)

CLAIMS AGAINST DECEDENTS—PRIORITY OF JUDGMENTS.

Under 2 Rev. St. p. 87, § 27, providing that an executor shall pay judgments docketed against deceased according to the priority thereof, respectively, a creditor whose judgment was first docketed is entitled to priority of payment though the property sought to be applied was acquired by the judgment debtor after all the judgments had been docketed. In re Hazard's Estate, 25 N. Y. Supp. 928, distinguished.

Application for the payment of a judgment recovered against Harriet M. Foster, deceased.

Lucius H. Beers, for petitioners.
Putney & Bishop, for William Bingham.
Olcott, Mestre & Gonzales, for John Monroe & Co.
H. G. Hull, for executor.

ABBOTT, S. Harriet M. Foster died on September 29, 1892. She left a last will and testament, which was admitted to probate February 27, 1893. On December 29, 1886, the petitioners in this proceeding secured a judgment in the New York supreme court against Harriet M. Foster, impleaded with others, upon which there is now due about $68,000. Other creditors, who oppose this application, also secured judgments against Harriet M. Foster in her lifetime, but they were all secured and docketed subsequent to the judgment in favor of the petitioners. Letters testamentary of the last will and testament of Harriet M. Foster were issued out of this court to Chester M. Foster on February 27, 1893. The only asset of the estate of Harriet M. Foster which ever came into the hands of the executor is a fund amounting to about $5,300,—proceeds of a recovery in a suit in equity brought by said executor after the decease of his testatrix, for an accounting of certain transactions between testatrix in her lifetime and the defendants in that action. The petitioners claim the entire fund in the hands of the executor,

under the statute giving priority in the payment of debts of deceased persons to judgment creditors in the order of the docketing of their judgments. Whether the claim of the testatrix upon which her executor ultimately recovered his judgment was an asset at the time of her decease, or at the time of the recovery of the respective judgments, is immaterial for the purposes of the disposition of this question. The authority cited by the learned counsel for the creditors, John Monroe & Co. and William Bingham (In re Hazard, 73 Hun, 22, 25 N. Y. Supp. 928) has no application whatever to the particular question submitted for my determination. In that case an application was made for the distribution of surplus moneys arising out of the sale in foreclosure proceedings of real property of the decedent. The real property from the sale of which surplus arose was acquired by the decedent after the recovery and docketing of all the judgments under which claims for the surplus were made. It was very properly decided in that case that no priority of lien existed in favor of any of the judgment creditors on account of priority in the docketing of the judgments in the county in which the land was situated. The creation of all such liens and rights to the priority of payment of one class of claims over those of others is purely artificial and the creation of legislatures. Each legislative enactment must receive its own peculiar construction, according to the language used in the creation of such artificial rights. The language of the legislature construed in Re Hazard, 73 Hun, 22, 25 N. Y. Supp. 928, is: "All judgments hereafter rendered in any court of record shall bind and be a charge upon the lands," etc. A definite and specific charge and lien is created upon the specific real property of which the judgment debtor is seised, situated in the county in which the judgment is docketed. When the ownership of the land follows the docket of the judgment, the conclusion seems reasonable that such ownership shall relate back to the lien of all the docketed judgments equally, because the event which creates the lien in that case is not the docketing of the judgment, but the acquisition of the land. The authority cited and the statute construed relate exclusively to the subject of "liens." In the statute under which the pending application is made there is no suggestion of a lien or charge upon any of the property of the deceased person whose estate is to be distributed:

"Every executor and administrator shall proceed with diligence to pay the debts of the deceased and shall pay the same according to the following order of classes: (1) Debts entitled to a preference under the laws of the United States. (2) Taxes assessed upon the estate of the deceased previous to his death. (3) Judgments docketed and decrees enrolled against the deceased according to the priority thereof respectively. (4) All recogn'zances, bonds, etc. No preference shall be given in the payment of any debt over other debts of the same class, except those specified in the third class." 2 Rev. St. p. 87, §§ 27, 28.

Here there is no suggestion of a lien or charge upon any part of the assets of the testator. The statutory rule is laid down for the guidance of executors in the settlement of their estates. Given a fund for distribution, upon which there are no specific liens, and

for which they are accountable as executors, they seek the statute for the purpose of learning what disposition to make of the fund. They are there directed "to pay the debts of the deceased according to the following order." There being no debts under either the first or second class, they are next to pay "judgments docketed and decrees enrolled against the deceased according to the priority thereof respectively." Moreover, this class is made the only exception in which preference is "given in the. payment of any debt over other debts of the same class." The statutory provision above quoted may or may not be equitable, but I have no doubt whatever as to the intention of the legislature. Let a decree be submitted accordingly, on two days' notice.